IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KEN WALTERS, et al.,

        Plaintiff(s),

  vs.

WORLD SWEEPING, INC.,

        Defendant(s).

No. C 04-5084 VRW (MEJ)

**REPORT AND RECOMMENDATION RE: PLAINTIFFS' MOTION TO DETERMINE THE AMOUNT OF DAMAGES**

## I.  INTRODUCTION

Before the Court is Plaintiffs' Motion to Determine the Amount of Damages, filed on January 26, 2006. Doc #32. After consideration of Plaintiff's papers, Chief Judge Walker's previous default judgment order in this matter, the applicable statutory and case law authorities, and good cause appearing, the Court hereby RECOMMENDS that the District Court order Defendant to pay Plaintiffs the following: (1) $11,527.39 in unpaid fringe benefits; (2) $1,753.45 in liquidated damages; (3) $1,146.01 in interest - minus a credit of $1,104.00, for a total amount due of $13,322.85; and (4) an additional $1,462.50 in attorney's fees and $79.50 in costs related to the instant motion.

## II.  BACKGROUND

Plaintiffs, which are various employee trust funds and their respective trustees, brought this ERISA action on December 1, 2004, alleging that defendant World Sweeping, Inc. ("Defendant") violated a collective bargaining agreement ("CBA") and various trust agreements (Doc #19, Ex B; Doc #22) by not paying fringe benefit contributions to the trust funds and not submitting to an audit.

Doc #1. Although served on December 15, 2004 (Doc #3), Defendant never filed an answer or responsive pleading, and the Clerk of Court entered default on March 30, 2005. Doc #14.

On June 13, 2005, Plaintiffs filed a Motion for Default Judgment (Doc #17), which the Honorable Chief Judge Vaughn R. Walker granted on January 6, 2006. Doc #30. In granting Plaintiffs' motion, Chief Judge Walker: (1) ordered Defendant to pay Plaintiffs' $3,692.50 in attorneys' fees and $234.50 in costs; (2) enjoined Defendant to submit to an audit of its books and records, as required by the CBA and trust agreements, and to pay the amount due under the audit, plus interest; (3) permanently enjoined Defendant to submit all monthly contribution reports and payments required under the CBA and trust agreements; and (4) ordered Defendant to provide Plaintiffs with an accounting of Defendant's transactions with Plaintiffs. *Id.* Chief Judge Walker also referred this matter to a magistrate judge for a report and recommendation to determine the amount, if any, that Defendant owes plaintiffs for fringe benefit contributions, liquidated damages and interest. *Id.*

On January 26, 2006, Plaintiffs filed a Motion to Determine the Amount of Damages (Doc #32), as well as the Declaration of Nicole M. Phillips (Doc #33) and Wayne McBride (Doc #36) in support thereof. Defendant filed no opposition. On March 2, 2006, the Court held a hearing on the matter. Nicole Phillips appeared on behalf of Plaintiffs. Defendant made no appearance.

### III.   DISCUSSION

**A.   Unpaid Benefit Contributions**

In their complaint, Plaintiffs seek unpaid contributions in the amount of $11,527.39. These contributions were calculated based on amounts set out in the Operating Engineers Local Union No. 3 Sweeper Agreement for Northern California ("Sweeper Agreement"), which Defendant signed on August 13, 2002. Decl. of Wayne McBride, Doc #36, ¶4, Ex. B. Section 6.01.00 of the Sweeper Agreement requires that employers contribute into each of the Plaintiff Trust Funds at specified rates for each hour worked by employees performing work covered by the collective bargaining agreement. *Id.* The Sweeper Agreement also lists the applicable rates into each of the Plaintiff Trust Funds. For example, Section 6.02.00 sets the rate of benefit contributions into the Health and

2

1  Welfare Plan. Section 6.02.01 sets the rate for benefit contributions into the Pensioned Health and
2  Welfare Plan, etc. *Id.*

3  In or around March 2004, the Trust Funds' auditor, Hemming Morse, conducted an audit of
4  Defendant. On April 17, 2004, Hemming Morse created a Summary of Liabilities detailing the
5  amounts owed by Defendant. *Id.* at ¶10, Ex. C. The audit report revealed that Defendant employed
6  employees performing work covered under the Sweeper Agreement between August 15, 2002 and
7  September 2003, and underreported to the Trust Funds on hours performed by their employees. The
8  audit revealed that between October 2002 and December 2002, Defendant failed to report 247.50
9  hours worked by its employees and failed to make the following contributions: $1,163.25 to the
10 Health and Welfare Trust Fund at a rate of $4.70 an hour, $269.78 to the Pensioned Health and
11 Welfare Trust Fund at a rate of $1.09 an hour, $990.00 to the Pension Fund at a rate of $4.00 an
12 hour, $153.45 to the Affirmative Action Training Fund at a rate of $0.62 an hour, $99.00 to the
13 Annuity Trust Fund at the rate of $0.40 an hour, and $61.88 to the Industry and Stabilization Trust
14 Fund at a rate of $0.25 an hour, for a total of $3,340.34 in delinquent contributions, plus
15 supplemental dues and vacation pay in the amount of $804.38, $556.50 in 12% interest, $602.99 in
16 15% liquidated damages, for a total of $4,701.22  The auditor deducted $1,104.00 for over-reported
17 hours, for a total of $3,597.22. *Id.* ¶11, Ex. C.

18 The audit also revealed that between January 2003 and December 2003, Defendant failed to
19 report 535.50 hours worked by its employees and failed to make the following contributions:
20 $1,828.35 to the Health and Welfare Trust Fund at a rate of $5.10 an hour, $534.17 to the Pensioned
21 Health and Welfare Trust Fund at a rate of $1.49 an hour, $2,142.00 to the Pension Fund at a rate of
22 $4.00 an hour, $222.27 to the Affirmative Action Training Fund at a rate of $0.62 an hour, $143.40
23 to the Annuity Trust Fund at the rate of $0.40 an hour, and $89.63 to the Industry and Stabilization
24 Trust Fund at a rate of $0.25 an hour, for a total of $3,340.34 in delinquent contributions, plus
25 supplemental dues and vacation pay in the amount of $1,176.23, $589.51 in 12% interest, and 15%
26 liquidated damages in the amount of $1,150.46, for a total of $9,725.63. *Id.* at ¶12, Ex. C.

27 According to the auditor's Summary of Liabilities, the total amount of delinquent
28

3

1 contributions for 2002 and 2003 is $11,527.39 in fringe benefits, $1,753.45 in liquidated damages,
2 and $1,146.01 in interest, for a total of $14,426.85, minus $1,104.00 for over-reported hours, for a
3 grand total of $13,322.85.  *Id.* at Ex. C.

### B.    Liquidated Damages

Liquidated damages are authorized under the Sweeper Agreement, as well as the Trust Agreements establishing the Trust Funds, where the employer has failed to make timely benefit contributions, not as a penalty, but as a reasonable attempt to cover damages incurred by the Trust Funds.  *Id.* at Ex. B.  Pursuant to Section 07.01.00 of the Sweeper Agreement, the Trust Funds may assess liquidated damages against delinquent employers because the regular and prompt payment of amounts due each Trust is essential and, in light of the substantial but varied expense incurred in the administration of the Trusts due to delinquencies, it is extremely difficult, if not impracticable to fix the payments in full within the time provided.  *Id.*  By signing the Sweeper Agreement, Defendant agreed that the amount of damage resulting from any failure to pay would be by way of liquidated damages, and not as a penalty to each Trust, in the amount of $35.00 or 15% of the amount due and unpaid to each such Trust, whichever is greater.  *Id.* at Ex. B, Section 07.01.00.

Further, a trust fund may collect liquidated damages under ERISA Section 515, 29 U.S.C. § 1145.  Contractual liquidated damages are valid so long as the harm caused by a breach is difficult or impossible to estimate, and the amount fixed is a reasonable forecast of just compensation for the harm caused.  *Idaho Plumbers and Pipefitters Health and Welfare Fund v. United Mechanical Contractors*, 875 F.2d 212, 217 (9th Cir. 1989).  The parties' intentions determine whether this second requirement is satisfied  - they must make a good faith attempt to set an amount equivalent to the damages they anticipate.  *Id.*

Here, the current rate of 15% was set both by the Sweeper Agreement and by the Board of Trustees.  *McBride Decl.*, ¶5, Ex. B.  The liquidated damages provision in the Sweeper Agreement covers the time frame during which contributions became due and owing, and such provision was collectively bargained by all parties.  *Id.*,  ¶4, Ex. B.  As Defendant was delinquent in payment of Trust Fund contributions between August 2003 and December 2004, the Court finds $1,753.45 in

4

liquidated damages and $1,146.01 in interest appropriate per Section 07.01.00 of the Sweeper Agreement.

**C.     Attorney's Fees and Costs**

In his January 6 Order, Chief Judge Walker referred this matter for a determination of the amount owed in fringe benefit contributions, liquidated damages, and interest.  However, as part of their motion, Plaintiffs request an additional $1,962.50 in attorneys' fees and $79.50 in costs in connection with the present motion.  Given the additional briefing and court appearance by Plaintiffs since Judge Walker's order, the Court finds it appropriate to consider Plaintiffs' request.  Under Section 07.01.02 of the Sweeper Agreement, Plaintiffs are entitled to an award of attorneys' fees and costs.  Doc #36, Ex. B.  Further, Plaintiffs have provided sufficient evidence to support their request for fees and costs, both of which appear to be reasonable.  Doc #33.  One exception, however, is the $450 request for "Review of Opposition, legal research, preparation, and filing of Reply brief." *Id.* at 2:12.  As no opposition was filed, an award of $450 is inappropriate.  Accordingly, the Court recommends an award of $1,462.50 in attorneys' fees and $79.50 in costs.

## IV.     CONCLUSION

Based on the foregoing analysis, the Court hereby RECOMMENDS that the District Court order Defendant to pay Plaintiffs the following: (1) $11,527.39 in unpaid fringe benefits; (2) $1,753.45 in liquidated damages; (3) $1,146.01 in interest - minus a credit of $1,104.00; (4) $1,462.50 in attorneys' fees; and (5) $79.50 in fees.

Pursuant to Federal Rule of Civil Procedure 72(a), Defendant may serve and file objections to this Report and Recommendation within ten days after being served with a copy of it; Defendant may not thereafter assign as error a defect in the report to which objection was not timely made.

**IT IS SO RECOMMENDED.**

Dated: March 2, 2006

MARIA-ELENA JAMES
United States Magistrate Judge

5